```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY IRVING REYNOLDS            :        CIVIL ACTION
                                :
          v.                    :
                                :
U.S. DEPARTMENT OF HEALTH       :
AND HUMAN SERVICES, et al.      :        NO. 10-5549
```

MEMORANDUM

Bartle, J.                                        July 14, 2011

   Plaintiff Gary I. Reynolds, M.D. ("Reynolds") brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 501 et seq. against defendants the United States Department of Health and Human Services and Secretary Kathleen Sebelius in her official capacity (collectively "DHHS").[1] Before the court are the cross-motions of the parties for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[2]

              I.

   We grant a motion for summary judgment only "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact

---

[1]. A suit against Secretary Sebelius in her official capacity is tantamount to a suit against the DHHS itself. See, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991). With respect to claims for injunctive relief under the APA, DHHS has waived sovereign immunity. 5 U.S.C. § 702.

[2]. In the alternative, DHHS moves to dismiss the complaint for failure to state a claim under Rule 12(b)(6). Because we consider information in the administrative record outside of the amended complaint (Docket Nos. 16 and 22), we will treat the motion of DHHS as one for summary judgment.

and that the moving party is entitled to judgment as a matter of law." Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(2). We view the facts and draw all inferences in favor of the non-moving party. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).

## II.

Reynolds is a doctor who was most recently employed as a medical officer with the Bureau of Prisons ("BOP"). The BOP terminated his employment on January 5, 2009 based on a finding that Reynolds gave a female correctional officer a breast examination during a pre-employment screening. After an investigation, the BOP concluded that the correctional officer neither requested the breast examination nor indicated any pre-existing condition that would require such examination. In a letter, the BOP notified Reynolds that "[a] breast examination is unnecessary during a pre-employment medical screening for this agency, and conducting one demonstrates a gross lapse in judgment and is an abuse of your position."

The BOP submitted a report regarding the termination of Reynolds to the Healthcare Integrity and Protection Data Bank ("HIPDB") pursuant to the requirements of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320a-7e. The HIPDB was designed to collect certain adverse actions against health care professionals and thereby facilitate a more

comprehensive review of professional credentials.  45 C.F.R. §§ 61.1-61.16.

The HIPDB report stated that Reynolds was terminated for a "non-sexual dual relationship or boundary violation."  In its description of the incident, the BOP stated in the report that:

> A female correctional officer filed a complaint with the agency alleging that a male medical officer misused his power of position while conducting her pre-employment physical examination.  This allegation was sustained after an internal investigation was completed.  Medical officer was terminated on January 5, 2009.

Reynolds disputed the report and sought administrative review.  Under HIPDB regulations, the subject of a report may bring the an alleged inaccuracy to the reporting entity's attention and request a correction.  45 C.F.R. § 61.15(b)(3).  The reporting entity must then void the report or correct any inaccuracy.  Id.  If the reporting agency does not take action within 60 days, the subject may then seek Secretarial review.  Id.  The regulations provide that "[t]he Secretary will only review the accuracy of the reported information, and will not consider the merits or appropriateness of the action or the due process that the subject received." Id. at § 61.15(c).  The Secretary will then issue a brief statement upholding the report or direct the agency to revise or void the report. Id.

On June 8, 2010, DHHS notified Reynolds that his dispute of the HIPDB report was denied.  In doing so, the DHHS

concluded that "the report as submitted accurately reflects the action taken by the Federal BOP and its corresponding basis for action."  Reynolds then filed the instant action against the BOP and DHHS on October 20, 2010.

Reynolds has also brought a suit against his former employer for racial discrimination under Title VII.  See Reynolds v. Mukaskey, No. 08-4270 (E.D. Pa. Mar. 15, 2007).  That case has since been settled.  As part of the settlement agreement, the BOP agreed to "remove the January 5, 2009 letter of termination from Plaintiff's personnel file (and all references thereto) and will replace it with a form SF-50, noting Plaintiff's resignation from the BOP."  In exchange for the settlement, Reynolds voluntarily dismissed all defendants except DHHS from the instant action.  We then granted Reynolds leave to file an amended complaint to reflect the dismissal of these defendants.

### III.

Reynolds seeks review of the DHHS decision to deny his dispute of the report under the Administrative Procedure Act ("APA").  The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Review is limited to the administrative record.  E.g., Camp v. Pitts, 411 U.S. 138, 142 (1973).  This court may only set aside agency decisions that are arbitrary and capricious, an abuse of discretion, or contrary to law.  Id. at § 706(2).

Reynolds first argues that the report of his termination should be voided from the HIPDB because the BOP used an incorrect code.  In the HIPDB report, the BOP stated that Reynolds was terminated for a "non-sexual dual relationship or boundary violation."  Reynolds maintains that the correct code would be a "sexual boundary violation."  According to Reynolds, his conduct meets the definition of "abusive sexual conduct," a criminal act defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2244.

In support of his argument, Reynolds relies on an article from the Journal of the American Medical Association entitled "Professional Boundaries in the Physician-Patient Relationship."  Glen O. Gabbard, et al., <u>Professional Boundaries in the Physician-Patient Relationship</u>, 273 JAMA 1445 (1995).  That article is not part of the administrative record and therefore must be disregarded.  <u>See</u> <u>Camp</u>, 411 U.S. at 142.  Even if it were proper to consider this article, it does not help Reynolds.  It notes that "[w]hile sexual contact is perhaps the most extreme form of boundary violation, many other physician behaviors may exploit the dependency of the patient on the physician and the inherent power differential.  These include ... some types of physical contact ... and misuses of the physical examination."

A "sexual boundary violation" is simply one type of "boundary violation." The decision of Reynolds to perform an unnecessary test clearly violated the boundaries of his position and the patient-physician relationship. The BOP properly concluded that his actions constituted "a gross lapse in judgment" and "an abuse of [his] position." Thus, the HIPDB report "accurately reflects the action taken by the Federal BOP and its corresponding basis for action." The determination of DHHS to uphold the BOP report was not arbitrary and capricious, an abuse of discretion, or contrary to law. See 5 U.S.C. § 706(2).

It is also difficult to see how Reynolds could have been damaged by the reporting of the more general "boundary violation" code, which seems less severe than the "sexual boundary violation" code that he advocates. In any event, the relief for an inaccurate coding would not be a voiding of the report, as Reynolds requests in the amended complaint, but rather a correction of the code. See 45 C.F.R. § 61.15(c)(2)(ii).

In his reply brief, Reynolds also contends that the narrative description in the HIPDB report is inaccurate. As stated earlier, the narrative at issue states that "[a] female correctional officer filed a complaint with the agency alleging that a male medical officer misused his power of position while conducting her pre-employment physical examination." The HIPDB Guidebook states that "[t]he information in the HIPDB should serve only to alert Government agencies and health plans that

there may be a problem with a particular practitioner's ... performance.  HIPDB information should not be used as the sole source of verification of ... professional credentials."  U.S. Dep't of Health & Human Servs., Healthcare Integrity & Protection Data Bank Guidebook A-2 (2001), available at http://www.npdb-hipdb.com/resources/HIPDBGuidebook.pdf.  The HIPDB is intended as merely a "flagging system."  Id.  The narrative at issue adequately describes the actions of Reynolds and the corresponding findings of the BOP.  Consequently, the DHHS correctly upheld the report.[3]

Reynolds further alleges that:  (1) the BOP failed to submit a revised HIPDB report indicating that the report was under appeal; and (2) the BOP was bound to void the report because his file was changed from "termination" to "resignation" as a result of the settlement of his Title VII case.  See Reynolds, No. 08-4270.  Reynolds did not raise either of these arguments at the administrative level.  45 C.F.R. § 61.15; see also Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1986).  Because Reynolds failed to exhaust administrative remedies, these claims are not properly before this court.

---

3.  If Reynolds remains concerned that the HIPDB narrative does not adequately convey the manner in which he misused his position, i.e. conducting an unnecessary breast examination, he is free to submit a statement to the report including this information.  HIPDB Guidebook at F-1; see also Leal v. Sec'y, U.S. Dep't of Health & Human Servs., 620 F.3d 1280, 1283-84 (11th Cir. 2010).

Accordingly, the motion of defendant DHHS for summary judgment will be granted and the motion of Reynolds will be denied.